997 P.2d 373 (2000)
STATE of Washington, Respondent,
v.
Mathue Allan MITCHELL, Appellant.
No. 42044-5-I.
Court of Appeals of Washington, Division 1.
February 14, 2000.
As Amended on Grant of Reconsideration in Part April 17, 2000.
*374 Eric Broman, Nielsen Broman & Associates, Seattle, for Appellant.
Thomas Garvey Jr., Seattle, for Respondent.
APPELWICK, J.
Mathue Mitchell appeals his conviction of one count of third degree assault and two counts of fourth degree assault. Mitchell contends that the trial court erred when it ruled that the testimony of his expert witness regarding diminished capacity was inadmissible under State v. Ealmon, 28 Wash.App. 98, 621 P.2d 1310(1981), and alternatively, under ER 702 when read in light of Edmon. After Mitchell's trial, the Supreme Court decided in State v. Ellis, 136 Wash.2d 498, 963 P.2d 843 (1998), that the admissibility of expert testimony regarding diminished capacity is to be determined under ER 702. We hold that admissibility of expert testimony under ER 702 does not require the expert to testify with certainty to the ultimate question of fact. We therefore reverse and remand for a new trial, and we decline to address the remaining issues.

FACTS
Mitchell was charged with two counts of third degree assault under RCW 9A.36.031(1)(g), and one count of fourth degree assault under RCW 9A.36.041. These charges resulted from an incident on April 4, 1997. Mitchell was walking down the sidewalk when for no apparent reason he punched a twelve-year-old boy in the face and continued walking. Three plain-clothed police officers, Gordon, Wood, and Kane were approaching Mitchell. Officer Wood observed Mitchell striking the boy, ran after Mitchell, yelled "Seattle Police ..., [y]ou're under arrest," and showed Mitchell her badge. Mitchell then punched that officer in the face. A violent struggle ensued between Mitchell and the officers. Eventually, with the help of citizens, Mitchell was restrained and arrested.
Mitchell was then committed for psychiatric observation to determine his competency and whether he suffered from any relevant mental diseases. Psychologist R.M. Hart evaluated Mitchell and concluded that he was not competent to stand trial. Dr. Hart stated that Mitchell's thought processes were "grossly disturbed," "floridly delusional," and often incoherent. On May 21, 1997, based on Hart's conclusions, Mitchell was found incompetent to stand trial and was committed for ninety days for further evaluation and treatment. Mitchell was subsequently evaluated by Dr. Joanne Ito, who concluded that he had become competent to stand trial. Dr. Kenneth Muscatel was then appointed to evaluate Mitchell's mental condition.
On November 13, 1992, the trial court held a hearing to determine the admissibility of Dr. Muscatel's expert testimony on Mitchell's mental state at the time of the incident. The prosecution stipulated that Dr. Muscatel was a qualified expert. Dr. Muscatel interviewed *375 Mitchell on October 31, 1997, at the King County jail. Dr. Muscatel also relied on the police reports, and on the reports of Drs. Hart and Ito.
Dr. Muscatel agreed with Dr. Ito's conclusion that Mitchell suffered from a type of paranoid schizophrenia with polysubstance abuse. Dr. Muscatel stated that he was "100 percent certain" that Mitchell suffered from a mental disorder, likely a schizophrenic disorder with paranoid and psychotic features. Dr. Muscatel also stated that the potential for psychotic features rose when Mitchell did not take his antipsychotic medications. Finally, Dr. Muscatel concluded, with "reasonable medical certainty," that Mitchell suffered from a severe mental disorder at the time of the incident, and the disorder "would have the potential to interfere with his knowledge."
After considerable argument from counsel regarding the admissibility of Dr. Muscatel's testimony, the trial court ruled that the testimony was inadmissible. The record shows that the trial court specifically considered this issue under State v. Edmon, 28 Wash. App. 98, 621 P.2d 1310 (1981), and the test for admissibility therein. Although the trial court noted potential inconsistencies between Edmon and Washington's Rules of Evidence, it concluded that the testimony was inadmissible under Edmon, and that Edmon "is the controlling authority."

DISCUSSION
On appeal, Mitchell contends that the trial court erred in excluding Dr. Muscatel's testimony. Defense counsel argued on appeal, as well as before the trial court, that Evidence Rule 702 provides the primary standard for admissibility of expert testimony regarding diminished capacity. Mitchell therefore maintains that the trial court's application of State v. Edmon, 28 Wash.App. 98, 103-4, 621 P.2d 1310 (1981), rather than a strict application of ER 702, was in error. We agree.
At the time of Mitchell's trial, intelligent people could reasonably disagree about whether the proper analysis for this issue was found under Edmon, ER 702, or a combination of the two. Edmon established nine specific factors that must be satisfied to admit expert testimony on diminished capacity.[1] By contrast, under ER 702, an expert's opinion may be admitted to assist the jurors to understand issues and facts regarding evidence of a defendant's diminished capacity. ER 702 states, in relevant part,
If scientific ... knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion....
After the instant trial, the Washington State Supreme Court ruled in State v. Ellis, 136 Wash.2d 498, 963 P.2d 843 (1998), that Edmon is not necessarily controlling, and found in that case that "[t]he question of admissibility of the testimony of defense experts is better determined under ER 702, *376 401, and 402." Ellis, 136 Wash.2d at 521, 963 P.2d 843. Notably, the Ellis Court reiterated this: "We do not adopt the foundational requirements announced in Edmon as absolute." Ellis, 136 Wash.2d at 522, 963 P.2d 843. Although the Ellis Court did not expressly overrule the Edmon factors, any uncertainty about the holding of Ellis was resolved in State v. Greene, 139 Wash.2d 64, 984 P.2d 1024 (1999):
ER 702 controls the analysis for both insanity and diminished capacity. The State asks us to revisit our recent decision in State v. Ellis, 136 Wash.2d 498, 963 P.2d 843 (1998), in which we held the admissibility of expert testimony regarding diminished capacity is to be determined under ER 702. Ellis, 136 Wash.2d at 523, 963 P.2d 843. We decline the State's invitation. ER 702 is the standard for admissibility of expert testimony in Washington.
Greene, 139 Wash.2d at 73 n. 3, 984 P.2d 1024.
In excluding the testimony of Dr. Muscatel, the trial court first relied on State v. Edmon, 28 Wash.App. 98, 621 P.2d 1310 (1981). In light of Ellis, this was error, which requires reversal and remand. But, aware that Edmon might not be controlling authority, the court went on to consider ER 702 as an alternative basis for admissibility. We therefore explain why the trial court's ruling that Dr. Muscatel's testimony was inadmissible under ER 702 was in error.
Mitchell offered the defense of diminished capacity against two counts of third degree assault of a police officer performing official duties. RCW 9A.36.031(1)(g). To prove the offense, the prosecution had to prove that the defendant knew the victim was a police officer performing official duties at the time. State v. Allen, 67 Wash.App. 824, 826-28, 840 P.2d 905 (1992).[2]
In a pretrial hearing, Dr. Muscatel testified that Mitchell, at the time of the offense, suffered from paranoid schizophrenia, a disorder capable of diminishing his capacity to know that the individuals he was dealing with were police officers. Dr. Muscatel could not, however, say with reasonable certainty that Mitchell's mental disorder actually caused his capacity to be diminished at the time of the incident. He could only say that it was possible.
Under ER 702 scientific evidence is admissible if it is "helpful to the trier of fact under the particular facts of the specific case in which the evidence is sought to be admitted." State v. Greene, 139 Wash.2d 64, 73, 984 P.2d 1024 (1999). Applying this standard, the court acknowledged that hearing Dr. Muscatel explain the dynamics of Mitchell's mental disorder would arguably help the jury to understand an otherwise bizarre incident. The court nevertheless concluded that an explanation of the dynamics of the disorder would confuse the jury and invite them to speculate unless Dr. Muscatel could also state that Mitchell's disorder was actually affecting his conduct at the time of the incident.
In a diminished capacity case, the expert's opinion must be helpful to the trier of fact in assessing the defendant's mental state at the time of the crime. See Greene, 139 Wash.2d at 74, 984 P.2d 1024. An opinion is helpful if it explains how the mental disorder relates to the asserted impairment of capacity. Greene, 139 Wash.2d at 74, 984 P.2d 1024. Under this standard, it is not necessary that the expert be able to state an opinion that the mental disorder actually did produce the asserted impairment at the time in questiononly that it could have, and if so, how that disorder operates.
The jurors could have properly considered Dr. Muscatel's testimony that Mitchell was suffering from paranoid schizophrenia at the time of the incident, along with testimony that was admitted regarding his behavior at the time of the incident, and determined whether Mitchell's capacity was diminished. It is the jury's responsibility to make ultimate determinations regarding issues of fact. See Ellis, 136 Wash.2d at 523, *377 963 P.2d 843; see also State v. Lord, 117 Wash.2d 829, 853, 822 P.2d 177 (1991).
The jury learns from the expert how the mental mechanism operates, and then applies what it has learned to all the facts introduced at trial. The Ellis Court also made clear that expert's opinions are not dispositive. Rather, the expert's opinions "would be subject to cross-examination as they were as `hostile witnesses' in the pretrial proceeding ... [t]he trier of factthe jurycan then determine what weight, if any, it will give to their testimony. This is fundamentally fair and consistent with due process." Ellis, 136 Wash.2d at 521-23, 963 P.2d 843.
The jury, after hearing all the evidence, may find probability where the expert saw only possibility, and may thereby conclude that the defendant's capacity was diminished even if the expert did not so conclude. See, e.g., State v. Welsh, 8 Wash.App. 719, 721, 508 P.2d 1041 (1973) (pre-Edmon case accepting expert testimony on diminished capacity as sufficiently founded where expert stated only "it was possible defendant experienced a psychomotor seizure at the time of the alleged assault."). Further, other evidence introduced at trial may provide the jury with more information about the defendant's mental state than was available pretrial to the expert. For this reason, excluding expert testimony on the basis of a motion in limine may be especially risky. See State v. Ellis, 136 Wash.2d 498, 523, 963 P.2d 843 (1998).
Dr. Muscatel knew Mitehell was a paranoid schizophrenic; that he was suffering from that disorder when he assaulted the plainclothes officers who were trying to arrest him; and that the disorder is capable of causing delusions. But Mitchell, in a pretrial interview with Dr. Muscatel, told him no more than that he "did not believe that they were police." Without more information about what Mitchell was thinking and feeling at the time of the incident, Dr. Muscatel did not have an opinion about whether Mitchell was actually experiencing delusions when he encountered the officers. The court reasoned that if Dr. Muscatel did not have enough facts or information to state an opinion on the ultimate question, the jury would be similarly unable to do so. Under ER 702, this was error. A jury should be allowed to determine whether Mitchell was experiencing delusions at the time of his arrest even if Dr. Muscatel could only say that it was possible.
Accordingly, in light of Ellis and Greene, we reverse and remand for a new trial. Under ER 702, the jury should be allowed to hear the testimony of Dr. Muscatel and to consider Mitchell's diminished capacity defense. We decline to address the remaining issues.
AGID, A.C.J., and BECKER, J., concur.
NOTES
[1] The factors are:

1. The defendant lacked the ability to form a specific intent due to a mental disorder not amounting to insanity.
2. The expert is qualified to testify on the subject.
3. The expert personally examines and diagnoses the defendant and is able to testify to an opinion with reasonable medical certainty.
4. The expert's testimony is based on substantial supporting evidence in the record relating to the defendant and the case, or there must be an offer to prove such evidence. The supporting evidence must accurately reflect the record and cannot consist solely of uncertain estimates or speculation.
5. The cause of the inability to form a specific intent must be a mental disorder, not emotions like jealousy, fear, anger, and hatred.
6. The mental disorder must be causally connected to a lack of specific intent, not just reduced perception, overreaction or other irrelevant mental states.
7. The inability to form a specific intent must occur at a time relevant to the offense.
8. The mental disorder must substantially reduce the probability that the defendant formed the alleged intent.
9. The lack of specific intent may not be inferred from evidence of the mental disorder, and it is insufficient to only give conclusory testimony that a mental disorder caused an inability to form specific intent. The opinion must contain an explanation of how the mental disorder had this effect.
Edmon, 28 Wash.App. at 102-103, 621 P.2d 1310 (citations omitted).
[2] After trial in this case, this court declined to follow Allen's requirement of proof that the defendant knew the victim was a law enforcement officer performing official duties. See Brown, 94 Wash.App. 327, 972 P.2d 112 (1999).