[No. 52174-8-I. Division One. October 18, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. SARA THOMAS, *Appellant*.

*Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *David W. Gross, Deputy*, for respondent.

SCHINDLER, J. — To be admissible, an expert's opinion on diminished capacity must be helpful to the trier of fact in assessing the defendant's mental state at the time of the crime. An expert does not have to testify with reasonable medical certainty that the mental disorder actually caused diminished capacity at the time of the crime, but the expert must be able to testify based on reasonable medical certainty that the defendant suffers from a mental disorder that impairs the defendant's ability to form the requisite intent to commit the crime. In this case, the expert witness would testify that it was possible that Sara Thomas was in

a blackout at the time of the crime but could not testify with reasonable medical certainty that Thomas suffers from a mental disorder which impaired her ability to form the intent required to commit assault in the first degree. The trial court did not abuse its discretion in excluding Thomas's expert testimony on diminished capacity. We affirm.

## FACTS

Sara Thomas has been drinking heavily and living on the streets on and off for the past 25 years. In the morning of September 25, 2002, Thomas began drinking beer at the Dome Stadium Tavern in downtown Seattle. She continued drinking with her boyfriend at various other places in the downtown Seattle area. In the evening, Thomas and her boyfriend returned to the Dome Stadium Tavern.

Samuel Soto, an acquaintance of Thomas's, and Jeanne Hughes were also drinking at the Dome Stadium Tavern that evening. According to the bartender, Thomas, her boyfriend, Soto, and Hughes all had a lot to drink. Shortly before the bar closed, Soto poured Thomas a glass of beer from his pitcher. A few minutes later, Thomas returned with her boyfriend's glass and started to fill it from Soto's pitcher. Soto stopped her and told her he would not give any beer to her boyfriend. Thomas became angry, called him a "culero,"[1] and left the tavern.

Hughes and Soto planned to go to another bar together. Hughes waited outside for Soto after the tavern closed. Thomas also waited outside and was facing the tavern entrance with her arms crossed. A knife was partially concealed in Thomas's hand. When Soto walked outside, he approached Thomas to talk to her. Before he could say anything, Thomas stepped towards Soto, stabbed him once in the chest, and ran away. Hughes witnessed the stabbing and rushed to help Soto. She asked a passerby to call 911. When the police arrived two to three minutes later, Hughes

---

[1] Soto testified that this means "asshole" in Spanish. Report of Proceedings (RP) (Mar. 5, 2003) at 55.

identified Sara Thomas as the person who stabbed Soto. Soto was taken to Harborview Medical Center and had emergency surgery.

The next day, a police detective interviewed Soto at the hospital. Soto said "Sara" stabbed him and identified Thomas from a photomontage.[2]

Two days after the stabbing, a police officer arrested Thomas at Victor Steinbrueck Park near Pike Place Market in downtown Seattle. Thomas initially gave the officer a false name. Later in the conversation, Thomas gave her real name and admitted she knew Soto. Thomas told the officer that she had no recollection of stabbing Soto at the tavern.

Thomas was charged with first degree assault with a deadly weapon. After she was charged, Thomas was admitted to Western State Hospital (Western State) for a 30-day observation and psychiatric evaluation. The court asked Western State to evaluate Thomas and provide an opinion concerning Thomas's sanity at the time of the offense and her capacity to form the intent required to commit first degree assault. In the report from Western State, Dr. R.M. Hart concluded Thomas did not suffer from a mental disorder that prevented her from understanding the nature and quality of her acts. There was "not enough factual information to support a forensic opinion concerning her capacity to form requisite mental state."[3] In his report, Dr. Hart also stated that there was a "high probability" Thomas was intoxicated on the night of the incident and that Thomas could present a defense of voluntary intoxication to the assault charge.[4] After treatment with antidepressants, Thomas was returned from Western State for trial.

At the request of Thomas's lawyer, Dr. Robin LaDue conducted a psychological evaluation of Thomas. Dr. LaDue interviewed Thomas and administered several cognitive

---

[2] RP (Mar. 5, 2003) at 66.

[3] Clerk's Papers (CP) at 59.

[4] CP at 59.

skills tests. Dr. LaDue prepared a report based on her psychiatric evaluation of Thomas.

At trial Thomas presented two alternative theories: either she was not the person who stabbed Soto, or if she stabbed Soto she did not remember doing so because of her diminished capacity. Thomas challenged Soto's and Hughes' recollection as unreliable because of the amount of alcohol they had consumed. Thomas testified that she remembered seeing Soto at the tavern on the evening of the stabbing and talking to him about his girl friend who had moved away but denied having an argument with him. Thomas said she did not remember anything after her conversation with Soto until the next morning when she woke up at her uncle's house. Thomas sought to introduce the expert testimony of Dr. LaDue to establish her diminished capacity defense. Thomas relied on Dr. LaDue's report to make an offer of proof on Dr. LaDue's proposed testimony. Based on Thomas's offer of proof, the trial court did not allow Dr. LaDue to testify. Thomas requested and the court gave a jury instruction on voluntary intoxication.

The jury convicted Thomas of first degree assault while armed with a deadly weapon. Thomas appeals.

## ANALYSIS

Thomas argues the trial court abused its discretion in excluding Dr. LaDue's testimony that it was possible Thomas's alcohol consumption resulted in a "blackout" and that Thomas may have had diminished capacity due to her voluntary intoxication. Thomas contends the exclusion of Dr. LaDue's testimony violated her constitutional right to present a defense.

Dr. LaDue described Thomas's reported history of alcohol use in her written report:

Ms. Thomas has a long history of alcohol abuse, dating back for at least 25 years. There are concerns that she might have been prenatally exposed to alcohol and other substances but she may have some organic damage from her long-term substance

abuse. She describes a pattern of heavy alcohol consumption resulting in blackouts. She drinks until she is drunk on a regular basis.[5]

Based on Thomas's reported history and her psychological evaluation, Dr. LaDue concluded:

It is possible that she was in a black [sic] out at the time of the alleged incident . . . .

In response to [defense counsel's] concern that Ms. Thomas may have diminished capacity due to her voluntary intoxication, this is a possibility. She drinks until highly intoxicated, reports a pattern of blackouts, and has limited insight or control over her behavior.[6]

Thomas sought to introduce Dr. LaDue's opinion from the report to support her diminished capacity defense. In the offer of proof, Thomas stated that LaDue would testify that "it is possible that [Thomas] was in a blackout at the time of the alleged incident."[7] Thomas argued Dr. LaDue's conclusion was consistent with Dr. Hart's report that it was highly likely she was intoxicated on the night of the stabbing.[8] Thomas also argued her "history of alcoholism" and "lack of any memory" of the incident corroborated Dr. LaDue's conclusion.[9] Thomas contended the testimony of Dr. LaDue would assist the jury in evaluating whether Thomas had the ability to form the intent to commit first degree assault.[10]

The State moved to exclude Dr. LaDue's testimony as inadmissible because it was not helpful under ER 702:

The experts in this case can't even offer any guidance on how intoxicated she was or whether or not she was in fact intoxicated. They can simply say it's possible she was drinking to the

---

[5] CP at 51.

[6] CP at 51-52.

[7] RP (Mar. 3, 2003) at 18.

[8] RP (Mar. 3, 2003) at 18.

[9] RP (Mar. 3, 2003) at 19.

[10] RP (Mar. 3, 2003) at 21.

level of a blackout; however, lack of memory of the events in question does not equal lack of capacity to form intent to commit assault.[11]

The State also argued Dr. LaDue's testimony was not beyond the common experience and understanding of the average juror.

The trial court excluded Dr. LaDue's testimony. The court ruled that the jury would have to rely on the testimony of the other witnesses and "their own knowledge and experience" to determine whether Thomas had the capacity to form the intent necessary to commit first degree assault.[12] The trial court concluded Dr. LaDue's testimony "that things are possible" would not assist the jury.[13]

Thomas argues the trial court abused its discretion by excluding Dr. LaDue's testimony to support her diminished capacity defense. The admissibility of evidence rests within the sound discretion of the trial court and this court will not disturb the trial court's decision unless no reasonable person would adopt the trial court's view. *State v. Atsbeha*, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001). Defendants have the right to present a defense, but do not have the right to introduce evidence that is irrelevant or otherwise inadmissible. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992).

Admissibility of expert testimony is governed by ER 702. ER 702 requires that (1) the witness is qualified as an expert and (2) the testimony would be helpful to the trier of fact.[14] *State v. Farr-Lenzini*, 93 Wn. App. 453, 461, 970 P.2d 313 (1999). Expert testimony is helpful if it concerns matters beyond the common knowledge of the average layperson and does not mislead the jury. *Id.*

---

[11] RP (Mar. 3, 2003) at 25.

[12] RP (Mar. 3, 2003) at 28.

[13] RP (Mar. 3, 2003) at 28.

[14] ER 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

To be admissible on the issue of diminished capacity, expert testimony must establish how the alleged mental condition impaired the defendant's ability to form the requisite level of intent. *State v. Guilliot*, 106 Wn. App. 355, 363, 22 P.3d 1266 (2001) (expert testimony inadmissible absent a link between hypoglycemia symptoms and the defendant's mental capacity at the time of the crime).

> It is not enough that a defendant may be diagnosed as suffering from a particular mental disorder. The diagnosis must, under the facts of the case, be capable of forensic application in order to help the trier of fact assess the defendant's mental state at the time of the crime. The opinion concerning a defendant's mental disorder must reasonably relate to impairment of the ability to form the culpable mental state to commit the crime charged.

*Atsbeha*, 142 Wn.2d at 921.

Diminished capacity is a defense when either specific intent or knowledge is an element of the crime charged. If specific intent or knowledge is an element, evidence of diminished capacity can then be considered in determining whether the defendant had the capacity to form the requisite mental state. *State v. Warden*, 133 Wn.2d 559, 564, 947 P.2d 708 (1997); *State v. Greene*, 92 Wn. App. 80, 106-07, 960 P.2d 980 (1998). Assault in the first degree includes specific intent as an element. For assault in the first degree, the State had to prove Thomas intended to inflict great bodily harm. RCW 9A.36.011(1).

To present a diminished capacity defense, expert testimony must establish that a "mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged." *Atsbeha*, 142 Wn.2d at 914; *State v. Ferrick*, 81 Wn.2d 942, 944-45, 506 P.2d 860 (1973). The expert testimony must "logically and reasonably connect the defendant's alleged mental condition with the asserted inability to form the required [mental states] to commit the crime charged." *Ferrick*, 81 Wn.2d at 945; *see also State v. Griffin*, 100 Wn.2d 417, 418-19, 670 P.2d 265 (1983).

Thomas relies on *State v. Mitchell*, 102 Wn. App. 21, 27, 997 P.2d 373 (2000), to argue Dr. LaDue's testimony was admissible. In *Mitchell*, the defendant was charged with two counts of third degree assault of a police officer. The State had to prove Mitchell knew the victim was a police officer performing official duties at the time of the crime. RCW 9A.36.031(1)(g). In *Mitchell*, the expert witness testified with reasonable medical certainty that at the time of the incident Mitchell suffered from paranoid schizophrenia, a severe mental disorder, and the disorder "would have the potential to interfere with his knowledge" that the individuals he assaulted were police officers. *Mitchell*, 102 Wn. App. at 24. Mitchell's expert witness "could not, however, say with reasonable certainty that Mitchell's mental disorder actually caused his capacity to be diminished at the time of the incident. He could only say that it was possible." *Id.* at 26. The trial court excluded the testimony because the expert could not state that Mitchell was actually experiencing delusions when he committed the crime. *Id.* This court reversed and held that if an expert witness testifies based on reasonable medical certainty that the defendant suffers from a mental disorder that impairs the defendant's ability to form the requisite intent at the time of the crime, it is "not necessary that the expert be able to state an opinion that the mental disorder actually did produce the asserted impairment at the time in question—only that it could have, and if so, how that disorder operates." *Id.* at 27.

Here, Dr. LaDue's proposed testimony was that Thomas may have had diminished capacity because of voluntary intoxication and it was possible she was in a blackout the night Soto was stabbed. Unlike the expert in *Mitchell*, Dr. LaDue could not state, based on reasonable medical certainty, that Thomas suffers from a mental disorder that impairs her ability to form the intent to inflict great bodily harm. Nor did Dr. LaDue express an opinion as to whether, if Thomas were in a blackout at the time of the crime, the blackout affected Thomas's ability to form the intent to commit assault in the first degree. A person can be intoxi-

cated and still able to form the requisite intent. *State v. Gabryschak*, 83 Wn. App. 249, 921 P.2d 549 (1996).

Dr. LaDue did not express the opinion that Thomas suffers from a mental disorder that impairs her ability to form the intent necessary to commit first degree assault; the trial court's decision to exclude Dr. LaDue's diminished capacity testimony was not an abuse of discretion.[15] The evidence was not helpful to the trier of fact in assessing Thomas's mental state at the time of the crime and her right to present a defense was not violated. *See Rehak*, 67 Wn. App. at 162.

In addition, while Thomas could not present expert testimony to establish diminished capacity, she was able to present a voluntary intoxication defense and argue her intoxication prevented her from forming the requisite intent for first degree assault.

■ A voluntary intoxication defense is separate from, but similar to, a diminished capacity defense. A diminished capacity defense allows the jury to consider evidence of a "mental illness or disorder" in determining whether the defendant had the capacity to form the intent required to commit the crime.[16] A voluntary intoxication defense allows the jury to consider "evidence of intoxication" to determine whether the defendant acted with the requisite intent.[17]

---

[15] *State v. Tilton*, 149 Wn.2d 775, 72 P.3d 735 (2003), cited by Thomas, is not helpful to our analysis. *Tilton* did not address the requirements for expert testimony in support of a diminished capacity case. In *Tilton*, the court concluded that without a sufficient transcript, the court could not decide whether counsel was ineffective for failing to assert either a diminished capacity or voluntary intoxication defense. *Id.*

[16] 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.20 (2d ed. 1994) (WPIC).

[17] WPIC 18.10. A voluntary intoxication defense allows consideration of the effect of voluntary intoxication by alcohol or drugs on the defendant's ability to form the required mental state. *State v. Coates*, 107 Wn.2d 882, 889, 735 P.2d 64 (1987). A defendant is entitled to a voluntary intoxication instruction when (1) the crime charged includes a mental state, (2) there is substantial evidence of drinking, and (3) there is evidence that the drinking affected the defendant's ability to form the requisite intent or mental state. *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37 (1992). The evidence "must reasonably and logically connect the defendant's intoxication with the asserted inability to form the required level of culpability to commit the crime charged." *Gabryschak*, 83 Wn. App. at 252-53.

But unlike diminished capacity, it is not necessary to present expert testimony to support an involuntary intoxication defense. The effects of alcohol are commonly known and jurors can draw reasonable inferences from testimony about alcohol use. *State v. Kruger,* 116 Wn. App. 685, 692-93, 67 P.3d 1147, *review denied,* 150 Wn.2d 1024 (2003); *State v. Smissaert,* 41 Wn. App. 813, 815, 706 P.2d 647 (1985).

Thomas testified about her 25-year history of alcohol and substance abuse and her history of blackouts. Thomas said she was highly intoxicated the night of the stabbing and did not remember anything after her conversation with Soto about his girl friend.[18] The court instructed the jury that voluntary intoxication could be considered in determining whether Thomas acted with intent to commit first degree assault.

## CONCLUSION

The trial court did not abuse its discretion in excluding Thomas's expert testimony on diminished capacity and Thomas was not denied the right to present a defense. Dr. LaDue could not testify based on reasonable medical certainty that Thomas suffered from a mental disorder that impairs her ability to form the intent to assault Soto. Dr. LaDue also did not express an opinion about the connection between a blackout and Thomas's ability to form the requisite intent.

We affirm.

KENNEDY and AGID, JJ., concur.

Review denied at 154 Wn.2d 1026 (2005).

---

[18] The testimony of the tavern's bartender that Thomas was "drinking heavily" on the evening of the crime corroborated her testimony. RP (Mar. 6, 2003) at 70.