IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>        v.<br><br>CURTIS DEAN MCDOUGALL,<br><br>        Appellant. | No. 87684-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Curtis McDougall appeals from his conviction of one count of failure to register as a sex offender as a person with two or more prior convictions of that offense. On appeal, McDougall asserts that the State did not present sufficient evidence to support that he acted with the knowledge required to convict him of the offense in question. He also contends that the statute authorizing the county sheriff's offices to specify a day and normal business hours during which convicted sex offenders must register was unconstitutionally vague as applied to him, and the sentencing court abused its discretion when it denied his request for an exceptional downward sentence. We disagree and affirm.

FACTS

In 2002, Curtis McDougall was convicted of assault of a child in the third degree with sexual motivation. As a result, he was required to register as a sex offender. Between 2003 and 2005, in Thurston County, he was charged with and

entered guilty pleas to failure to register as a sex offender on three separate occasions. Then, between 2009 and 2017, in Lewis County, he entered guilty pleas to failure to register as a sex offender on three more occasions. These convictions for failure to register, among others, imposed on McDougall a continuing duty to register as a sex offender.

McDougall was released from incarceration in January 2020. He was directed to report to the Lewis County Sheriff's Office (LCSO) to register as a sex offender. When he reported in, LCSO Detective Jamey McGinty provided him with a document outlining the sheriff's office's requirements for offender registration. The document included a requirement stating as follows:

> If you lack an official residence, you must report in person to the county sheriff's office where you last registered on a weekly basis. The report date for Lewis County Sheriff's Office is Monday between 9:00 A.M. and 4:00 P.M., excluding holidays, where the report date would be the following workday.

McDougall initialed and signed the document.

In April 2020, McDougall updated his residence with the LCSO as "transient." McGinty reiterated to McDougall the registration requirements for a person with a transient residence. McGinty told him that, in order to properly register, he had to complete the document provided to him and bring it in person to the Lewis County Sheriff's Office every week on Monday between 9:00 a.m. and 4:00 p.m.[1] Thereafter, between April 2020 and July 10, 2023—as described in his

---

[1] McGinty later testified with regard to individuals with a transient residence in the following exchange:
> . . . They're required to come in once a week and report the previous addresses of where they stayed during the week prior to, and then we'll give them another form to complete that [sic] for the following week, and then—with a date on it, and they'll come back.
> Q. Do they have to report in person?

briefing on appeal and as he testified at trial—McDougall registered weekly at the LCSO on 178 out of the 182 Mondays on which he was required to report.[2] He therefore did not timely register on four occasions during the time in question.

For the first two occasions, in August and September 2022, McDougall presented himself to the sheriff's office the day after the Monday on which he was required to report. McGinty provided him with a written and verbal warning on the first occasion and a verbal warning on the second. On the third such occasion, in April 2023, McGinty referred McDougall's case to the prosecutor's office, which ultimately declined to pursue charges against him.

Prior to the fourth occasion in which he failed to register, McDougall had registered in person at the sheriff's office the week before, on July 3, 2023. As with the prior instances in which he registered at the office, he was given a document informing him that his next registration date and time-window were the following Monday between 9:00 a.m. and 4:00 p.m. On Sunday, July 9, McDougall completed and signed the registration document provided to him by the LCSO. Then, on Monday, July 10, McDougall was required to appear at the sheriff's office to register. He did not.[3]

---

A. Yes.
Q. Do they have to report at the sheriff's office?
A. Yes.
Q. And you give them the date; correct?
A. Correct.

[2] Presumably, some of the Mondays on which McDougall was required to report were holidays and he successfully registered on the following day, per the sheriff's office's requirements.

[3] At the ensuing bench trial, McDougall's direct examination during his case in chief resulted as follows: "Q: And you were required to report on Monday July 10th, 2023? A: Yes. . . . Q. All right. And did you report on July 10th? A: No."

McDougall later testified that he knew that he had to register that day and he brought the completed registration document with him to work with the intention of presenting himself to the sheriff's office that day. When he finished his work at 5:00 p.m., however, he realized that he had forgotten to register and had missed the time-window to do so. McDougall telephoned the LCSO the following morning to let them know that he forgot to register on Monday and he was coming in to do so. Later that day, he presented himself at the office to register and, upon his arrival, McGinty arrested him and took him into custody.

McDougall was charged with one count of failure to register as a sex offender as a person with two or more prior convictions of that same crime, a class B felony, for the missed weekly registration on July 10, 2023. A one-day bench trial later commenced. The State called McGinty to testify and introduced exhibits in support of its case.[4] McDougall testified in his own defense and, in closing, argued that he was not guilty because he substantially complied with the sex offender reporting statute. The court issued its verdict from the bench, rejected his substantial compliance defense, and found him guilty as charged.[5]

At sentencing, McDougall requested an exceptional downward sentence. The court considered and rejected his request and, instead, imposed a sentence at the lowest end of the applicable range.

McDougall timely appealed.

---

[4] Despite the parties' repeated reference to these exhibits in their briefing on appeal, the exhibits admitted at trial have not been designated as part of the record for our review.

[5] The court later issued findings of fact and conclusions of law in support of its verdict. McDougall assigns error to three of the court's findings and conclusions. These challenged findings and conclusions are addressed herein.

ANALYSIS

I.     Sufficiency of the Evidence

McDougall first asserts that the trial court erred when it convicted him of failure to register as a sex offender because the State did not present sufficient evidence to establish that he knowingly failed to comply with the registration requirements.  We disagree.

Due process requires that the State prove beyond a reasonable doubt every fact necessary to constitute the crime charged.  *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amend. XIV, § 1.  "Sufficiency of the evidence is a question of constitutional law that we review de novo."  *State v. Melland*, 9 Wn. App. 2d 786, 801, 452 P.3d 562 (2019).

"When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."  *Id.*  "We defer to the trier of fact's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of evidence."  *State v. Curtiss*, 161 Wn. App. 673, 693, 250 P.3d 496 (2011).

McDougall was convicted pursuant to RCW 9A.44.132(1), which provides, "A person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and *knowingly*

fails to comply with *any of the requirements of RCW 9A.44.130*." (Emphasis added.)

RCW 9A.08.010(1)(b) defines "knowledge" as follows:

A person knows or acts knowingly or with knowledge when:
　　(i) [They are] aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
　　(ii) [They have] information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

The statute imposing a duty to register provides that

[a]ny adult residing whether or not the person has a fixed residence . . . in this state who has been found to have committed or has been convicted of any sex offense . . . *shall register with the county sheriff for the county of the person's residence*, . . . or as otherwise specified in this section.

RCW 9A.44.130(1)(a) (emphasis added). Additionally, another subsection of that statute explains that

[a] person who lacks a fixed residence *must report weekly, in person, to the sheriff of the county where* [*they are*] *registered*. The weekly report *shall be on a day specified by the county sheriff's office, and shall occur during normal business hours*. The person must keep an accurate accounting of where [they stay] during the week and provide it to the county sheriff upon request.

RCW 9A.44.130(6)(b) (emphasis added).

On appeal, McDougall does not contest that the State presented sufficient evidence to establish that he had a duty to register and he failed to comply with the requirements of RCW 9A.44.130. Rather, he contends that the State failed to present sufficient evidence to establish that he *knowingly* failed to do so. In essence, McDougall asserts that because he introduced evidence at trial that he forgot to register on the day in question, the State did not present sufficient

- 6 -

evidence to establish that he knowingly failed to register on that day. McDougall is incorrect.

In support of his contention on appeal, McDougall relies on an instruction on the crime of failure to register as a sex offender set forth in the Washington Pattern Jury Instructions. That instruction reads in pertinent part as follows:

Failure to Register as Sex or Kidnapping Offender—Elements

> To convict the defendant of the crime of failure to register [as a [sex] [kidnapping] offender], each of the following elements of the crime must be proved beyond a reasonable doubt:
> . . . .
> (3) That during that time period, the defendant knowingly failed to comply with [a requirement of [[sex] [kidnapping] offender] registration] [(specific registration requirement from RCW 9A.44.130)].

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 49C.02, at 1173 (5th ed. 2024) (WPIC).

Notably, as identified by the State on appeal, that instruction also sets forth a comment explaining the knowledge element of the offense in question: "Knowledge. It is an element of a failure to register charge that the defendant acted with knowledge of the applicable registration requirement. *Most typically, the evidence in support of this element will consist of written notification from law enforcement, prior court orders, or other evidence relating to prior adjudications.*" WPIC 49C.02, comment at 1175 (emphasis added).

The evidence introduced at trial was sufficient to establish that, in failing to report on the day in question, McDougall did so with knowledge of the registration requirements applicable to him. The following is undisputed: McDougall has been required to register as a sex offender for over 20 years. He has previously been

- 7 -

convicted of failure to register as a sex offender on six occasions. Since 2020, due to his transient residence, he has been required to report weekly in person at the Lewis County Sheriff's Office on Mondays between 9:00 a.m. and 4:00 p.m. Around that time, he signed paperwork reflecting that he understood this duty.

Additionally, for more than three years, he successfully complied with this duty each week, arriving at the sheriff's office on the designated day, during the designated time-window, on 178 out of the 182 days on which he was required to report. On the days he did not present himself, he did so on the following day and was given a warning about the consequences of his failure to report.

Furthermore, one week before the day in question, he successfully registered in person and was provided with documentation indicating that he was required to report on the following Monday. On the day before the one in question, he successfully completed and signed his paperwork for the following registration day. And, on the morning at issue, he brought this paperwork with him to work, but did not report to the sheriff's office between 9:00 a.m. and 4:00 p.m. Instead, he telephoned the office the following morning, explained that he "forgot," and presented himself at the office later that day.[6]

Given all of this, the record is replete with evidence supporting that McDougall failed to comply with the registration requirements while having

---

[6] At trial, McDougall did not argue or present evidence in support of a defense that his alleged forgetfulness arose from diminished capacity. *See State v. Thomas*, 123 Wn. App. 771, 779, 98 P.3d 1258 (2004) ("Diminished capacity is a defense when either specific intent or knowledge is an element of the crime charged. If specific intent or knowledge is an element, evidence of diminished capacity can then be considered in determining whether the defendant had the capacity to form the requisite mental state. . . . To present a diminished capacity defense, expert testimony must establish that a 'mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged.'" (citations omitted) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)).

knowledge of those requirements. The record reflects that, in general, McDougall was aware of his duty to report since 2002 and the legal consequences of failure to timely report since 2003. The record further establishes that, at a more specific level, McDougall was aware of the recurring location at which he was to report since 2009, his duty to report on a weekly basis in light of his transient residence, and the recurring day and time when he was to report since 2020. Furthermore, and even more particular to the day on which he failed to report, the record shows that McDougall had knowledge of the precise day and time at which he was required to report on the day in question for at least one week before he failed to register at the LCSO.

Thus, the evidence introduced at trial was sufficient to establish that McDougall committed the crime of failing to register as a sex offender with the knowledge required to support a conviction under the due process clause of the federal constitution. Accordingly, his challenge to the sufficiency of the evidence underlying his conviction fails.[7]

II.    Due Process

McDougall next asserts that RCW 9A.44.130(6)(b), the statute authorizing county sheriff's offices to specify the day and hours for sex offender registration, is unconstitutionally vague in violation of the due process clauses of the state and

---

[7] In reliance on WPIC 49C.02, McDougall contends that "knowledge of the duty to report does not, on its own, prove that the failure to comply with a specific registration requirement was knowing." However, he does not present us with persuasive decisional authority in support of the notion that proof of a defendant's knowledge of the duty to report, by itself, is not sufficient to uphold a conviction. Regardless, as explained herein, the evidence adduced at trial amply reflected that McDougall knew of the specific registration requirements with which he failed to comply.

federal constitutions. This is so, he contends, because the LCSO requirements adopted pursuant to that statute are arbitrary and, therefore, rendered his compliance with those requirements impossible. We disagree.

We review de novo a challenge to the constitutionality of a statute. *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999). Where the statute does not infringe on rights provided by the First Amendment to the United States Constitution, we evaluate a vagueness challenge "by examining the statute as applied under the particular facts of the case." *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). We presume that statutes are constitutional. *State v. Hamilton*, 33 Wn. App. 2d 895, 565 P.3d 595 (2025).

The guaranty of due process requires that laws not be vague. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. "The laws must (1) provide ordinary people fair warning of proscribed conduct and (2) have standards that are definite enough to 'protect against arbitrary enforcement.'" *State v. Irwin*, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015) (internal quotation marks omitted) (quoting *State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008)). However, if "'persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite.'" *State v. Johnson*, 197 Wn.2d 740, 747, 487 P.3d 893 (2021) (alterations in original) (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d at 754)

Once again, RCW 9A.44.130(6)(b) is the statute authorizing the sheriff's office to adopt the reporting requirements in question. It provides that a "person who lacks a fixed residence must report weekly, in person, to the sheriff of the

county where [they are] registered. *The weekly report shall be on a day specified by the county sheriff's office, and shall occur during normal business hours*." RCW 9A.44.130(6)(b) (emphasis added). Here, in accordance with this statute, the Lewis County Sheriff's Office specified that McDougall was required to make his weekly report on Mondays between 9:00 a.m. and 4:00 p.m.

As applied to the facts of this case, the LCSO's implementation of RCW 9A.44.130(6)(b) is not vague.[8] It specified that Mondays would be the day on which McDougall must report and the "normal business hours" for him to do so were between 9:00 a.m. and 4:00 p.m. No ordinary person could believe that such a day and time-window did not provide them with a fair warning of when they were to report. Nor could such a person believe that such a specific day and time-window were so abstract as to be subject to arbitrary enforcement. Thus, given the LCSO requirements adopted herein, an ordinary person could plainly understand what conduct was proscribed.

Moreover, McDougall conceded at trial and reiterates on appeal that, between 2020 and early July 2023, he was able to successfully comply with these same requirements on 178 out of the 182 reporting days on which he was required to report. He does not contend that he managed to do so for so long out of pure coincidence. Given that, the record does not support McDougall's contention that his ability to comply with the sheriff's office's registration requirements was impossible. Thus, the statute in question is not unconstitutionally vague as applied to him. Accordingly, he does not establish an entitlement to appellate relief.

---

[8] McDougall does not contest the constitutionality of RCW 9A.44.130(6)(b).

III.     Sentencing

McDougall next asserts that the sentencing court erred when it denied his request for an exceptional sentence below his standard range.  The court erred, he contends, because it failed to meaningfully consider his request.  According to McDougall, the court had a "mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which he may have been eligible."  We disagree.

Our Supreme Court has instructed that

> [t]he [Sentencing Reform Act of 1981[9] (SRA)] operates to provide structure to sentencing, "but does not eliminate[ ] discretionary decisions affecting [offender] sentences." RCW 9.94.010. Consistent with the SRA, a court "may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of [the SRA], that there are *substantial and compelling reasons justifying an exceptional sentence*."  RCW 9.94A.535.

*State v. McFarland*, 189 Wn.2d 47, 52, 399 P.3d 1106 (2017) (some alterations in original) (emphasis added).  The court has also directed that

> [w]hen a trial court is called on to make a discretionary sentencing decision, the court must meaningfully consider the request in accordance with the applicable law. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).  While no defendant is entitled to challenge a sentence within the standard range, this rule does not preclude a defendant from challenging on appeal the underlying legal determinations by which the sentencing court reaches its decision; every defendant is entitled to have an exceptional sentence actually considered. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).  A discretionary sentence within the standard range is reviewable in "'circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range.'" *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002) (quoting *Garcia-Martinez*, 88 Wn. App. at 330).  A trial court errs when "it refuses categorically to impose an exceptional sentence below the standard range under any

---

[9] Chapter 9.94A RCW.

- 12 -

circumstances" or when it operates under the "mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [a defendant] may have been eligible." *Garcia-Martinez*, 88 Wn. App. at 330; [*In re Pers. Restraint of* ]*Mulholland*, 161 Wn.2d [322,] 333[, 166 P.3d 677 (2007)].

*Id.* at 56.

Here, at sentencing, McDougall did not dispute the court's proposed findings of fact and conclusions of law for sentencing purposes, his proposed prior convictions, or that the standard sentencing range for the conviction in question was 43 to 57 months. The State recommended a term of confinement of 48 months, along with the required term of community custody. McDougall requested an exceptional downward sentence on the basis that he completed his prior term of Department of Corrections supervision, obtained gainful employment, found a fixed residence to move into, substantially complied with his reporting requirements, and voluntarily showed up the day after he missed the reporting date in question. McDougall acknowledged, however, that the reasons he provided "don't fit directly the mitigating circumstances listed in" the statute governing departures from the sentencing guidelines.[10]

The court denied his request and reasoned that

the problem here is that this requirement to register is something that you have known, you've known it very well.
. . . .
And you have this, you know, the once a week that you're supposed to do it, and you got a break over and over and over on this, you know, that you're not reporting. Well, you kept reporting late. You reported, but you kept doing it late, knowing that it had to be on Monday, but you just didn't do it.
So I don't accept that a sentence outside the standard range is appropriate here. I will impose the low end of the range, 43

---

[10] The statute in question, RCW 9.94A.535(1), sets forth a non-exhaustive list of mitigating circumstances on which a sentencing court may rely in departing from the sentencing guidelines.

months, because of the fact that the report did happen a day late each time.

But, you know, as I said earlier, if this was a case where you were required to report once every five years and you were a day late, that would be substantial compliance. But here, where you have been told over and over again that—and where it's every week, it makes a difference. It matters.

So I don't find that there are mitigating circumstance[s] here. I'm sympathetic to your situation but the statute is what it is, and so I'm going to impose the 43 months, credit for time served as calculated by the jail, and thirty-six months of community custody.

The sentencing court did not abuse its discretion when it denied McDougall's request for an exceptional downward sentence. As an initial matter, there is no indication that the court denied McDougall's request on the basis of either a categorical refusal to impose an exceptional sentence under any circumstance or a refusal to consider such a sentence for a certain class of offenders. *See Grayson*, 154 Wn.2d at 342.

Rather, the record reflects that the court heard and meaningfully considered McDougall's request. Notably, the court indicated that it understood his request and explained that it was rejecting it for the following reasons: McDougall had known about his duty to report for many years, repeatedly failed to report, frequently been warned about the consequences of not reporting, and, yet again, failed to report as ordered. The court further determined that even if the bases that he relied on were sympathetic, they did not, by themselves, constitute substantial or compelling reasons to justify departing below the standard range in his case.[11] *See McFarland*, 189 Wn.2d at 56.

---

[11] McDougall nevertheless asserts that the sentencing court engaged in a "misapprehension of the law" when it denied his request for an exceptional sentence outside the standard range. According to McDougall, the court erroneously denied his request in reliance on its finding convicting him beyond a reasonable doubt under the failure to register statute.

- 14 -

Additionally, McDougall conceded that the bases on which he relied for relief "don't fit directly the mitigating circumstances listed in this statute." Although the bases listed in RCW 9.94A.535(1) "are illustrative only and are not intended to be exclusive reasons for exceptional sentences," McDougall's concession supports that the bases that he presented are not of the type contemplated by the legislature as constituting substantial and compelling reasons justifying an exceptional sentence outside the standard range. Thus, the court did not abuse its discretion when it denied McDougall's request to depart from the sentencing guidelines.

Affirmed.

WE CONCUR:

---

McDougall is incorrect. As set forth herein, the court expressly denied his request on the basis that he did not present a substantial or compelling reason to justify an exceptional sentence in his case. *See McFarland*, 189 Wn.2d at 56. This was a valid basis on which to deny his request.

Furthermore, the record reflects that, in considering his request, the court identified that McDougall had been warned and yet repeatedly failed to timely register prior to the charges being brought against him in this matter. We construe the court's identification of such facts not as the court relying on the fact of his conviction as a basis to deny his request but, rather, as the court determining that such facts undermined his argument that he had presented a substantial or compelling reason in support of his request. We cannot say that the trial court erred by so reasoning.